IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

RORY O. DAWKINS                                                                                          PLAINTIFF

VS.                                     NO.  4:04CV00664 JWC

JO ANNE B. BARNHART,                                                   DEFENDANT
Commissioner, Social
Security Administration

## MEMORANDUM OPINION AND ORDER

Plaintiff, Rory O. Dawkins, appeals from the denial of his claim for disability insurance benefits and supplemental security income.  The decision of the Administrative Law Judge (ALJ) has become the final decision of the Commissioner.  The issue in this case is whether Plaintiff is disabled within the meaning of the Social Security Act.  For the reasons that follow, the Court affirms the Commissioner's decision that Plaintiff is not disabled.

Judicial review of the Commissioner's denial of benefits examines whether the decision is based on legal error, and whether the findings of fact are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); Brown v. Barnhart, 390 F.3d 535, 538 (8th Cir. 2004).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971).  If it is possible to draw two inconsistent conclusions from the evidence and one of these conclusions represents the Commissioner's findings, the Commissioner's decision must be affirmed.  Eichelberger v. Barnhart, 390 F.3d 584, 589 (8th Cir. 2004).

Plaintiff was born on June 7, 1955, has a high school education and a college degree in computer science and math, and has past work as a valet/van driver, state government program analyst, car dealer manager, lawn care self-employment, tax preparer, school computer lab manager, substitute teacher, and engineer tech programmer. (Tr. 61, 88, 90-97, 1008-09.) He also had two years of military service as a data processing technician. (Tr. 1009.) In his applications and at the hearing before the ALJ, Plaintiff alleged disability, with an onset date of June 2, 2001, due to: problems with his feet, back, legs and neck; insulin-dependent diabetes; hepatitis C; hypertension; carpal tunnel syndrome; high cholesterol; decreased visual acuity; pancreatitis; a head injury; post-traumatic stress disorder; and depression. (Tr. 61, 104, 1000, 1011-21.)

A claimant is disabled, within the meaning of the Social Security statutes and regulations, if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), § 1382c(a)(3)(A). The regulations provide a five-step process to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520, § 416.920; see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). Basically, those procedures require the ALJ to take into account whether a claimant is working, whether the claimant's physical or mental impairments are severe, whether the impairments meet or equal an impairment listed in the regulations, whether the impairments prevent a resumption of work done in the past, and whether they preclude any other type of work. Id. Even if found to be disabled under this five-step analysis, a claimant is not eligible for benefits if alcoholism or drug addiction comprises a contributing factor material to the determination of disability. 42 U.S.C. §

423(d)(2)(C), § 1382c(a)(3)(J); 20 C.F.R. § 404.1535, § 416.935. In making this determination, the ALJ must consider which limitations would remain when the effects of the substance use disorders are absent. Brueggemann v. Barnhart, 348 F.3d 689, 694-95 (8th Cir. 2003).

Here, the ALJ found at step one that, although Plaintiff had performed some work since his alleged onset date, he had not engaged in substantial gainful activity within the meaning of the Social Security Act. The ALJ next determined, at step two, that Plaintiff suffered from the following "severe" impairments: poly-substance abuse, substance-induced depression, degenerative disc disease, diabetes mellitus, hepatitis virus infection, history of foot problems with recent excision of callouses and bunions and remote excision of part of the fifth metatarsal and MP joint, and a remote history of pancreatitis. The ALJ found that none of the impairments, singly or in combination, equaled a step-three listed impairment as contained in the regulations. At steps four and five, the ALJ found that Plaintiff's chronic alcoholism and substance abuse caused functional limitations that prevented him from maintaining a normal work schedule on a sustained basis, which, when considered along with his other medically determinable impairments, precluded him from performing either his past relevant work or other jobs that exist in the national economy in significant numbers. The ALJ thus found that Plaintiff was disabled. (Tr. 12-15, 26-27.)

Next, taking note of the regulations regarding substance use disorders, the ALJ found that, if Plaintiff were to stop abusing alcohol and drugs, he would have the residual functional capacity to perform a significant range of sedentary work, except for work requiring more interpersonal contact than is incidental to tasks performed, such as assembly work, tasks that can be learned and performed by rote with few variables and

little judgment required, and where supervision is simple, direct and concrete. After taking testimony from a vocational expert, the ALJ found that Plaintiff was unable to perform his past relevant work but that there were a significant number of jobs in the national economy which he could perform, concluding that Plaintiff was not disabled. (Tr. 15-27.)

### Impairments Not Attributable to Substance Abuse

First, Plaintiff argues that the evidence is insufficient to support the ALJ's determination that Plaintiff's limitations (aside from his drug and alcohol-related disorders) did not render him disabled. The ALJ's opinion shows that he cited the applicable law and followed the proper procedure in evaluating the impact of Plaintiff's chronic alcohol and drug use. (Tr. 11, 15-16, 26.) In determining whether the substance abuse is "material" to the Commissioner's initial determination that Plaintiff was disabled from working, Plaintiff bears the burden of proving that he would still be disabled if he were to stop using drugs and alcohol. Vester v. Barnhart, 416 F.3d 886, 888 (8th Cir. 2005). Substantial evidence supports the ALJ's conclusion that substance abuse was a material factor in Plaintiff's disability and that, absent the substance abuse, his medically determinable impairments would not prevent him from performing work.

The 1,038-page record,[1] which the Court has reviewed in its entirety, shows that Plaintiff has a long history of drug/alcohol dependence and abuse. He has gone through the Veterans Administration's (VA) inpatient and outpatient treatment programs many

---

[1] Because the record is so lengthy, the references in this opinion are, for the most part, merely illustrative of the supporting evidence. Furthermore, the ALJ's opinion, also lengthy, discusses in detail the underlying medical evidence and it will not be repeated here unless necessary.

times, with the records denoting that his latest admission, in July 2003, was his tenth. (Tr. 827-30.) At that time, he reported that he was drinking a fifth of brandy or whiskey and smoking two or three marijuana joints each day, using cocaine on the weekends, and using methamphetamine occasionally. He has given markedly inconsistent statements as to his longest period of sobriety in the past five years. (E.g., Tr. 861 [two months], 828 [one year], 452 [ thirty months].) Although Plaintiff testified at the hearing that he was "clean" for about a year between November 2002 and October 2003 (Tr. 1023), this is refuted by the record, which shows positive drug screens in April, May and July 2003 (Tr. 643-44, 873, 892, 901), as well as Plaintiff's admissions of daily or almost-daily drug and alcohol use from March to July 2003 (Tr. 827-28, 833, 864, 891, 914, 926, 945, 950). As a whole, the VA records submitted here, covering March 2000 through February 2004, show only brief periods of sobriety.

The ALJ found that Plaintiff's alleged mental impairment (depression) was induced by his chronic substance abuse and that, if he were to cease his substance abuse, the depression and any related limitations would not occur. (Tr. 16.) This is supported by substantial evidence in the record, as explained by the ALJ, and Plaintiff does not identify any specific evidence to undermine that conclusion. In any event, as stated earlier, the ALJ's residual functional capacity assessment accounted for some degree of functional limitations based on mental/emotional factors by restricting him to work with minimal interpersonal contact, fairly simple tasks, and direct supervision.

Plaintiff contends that the ALJ should have found that his depression significantly restricted his ability to concentrate and focus his attention. The record supports the ALJ's decision not to impose such a restriction. Following his participation in a vocational clinic

in March 2002, Plaintiff reflected progress in setting and meeting goals, accepting instructions and providing feedback, and completing lessons. (Tr. 264-65.) In functional assessments completed in December 2001 and July 2002, the examiner observed that Plaintiff demonstrated the ability to follow simple directions, read and follow instructions, listen to and repeat information, work independently, maintain attention, focus on the tasks at hand, and perform work consistently. (Tr. 191-93, 418-19.) In August 2002, a consulting psychologist found that Plaintiff was moderately limited in his ability to maintain attention and concentration for extended periods, but had no significant limitations in his ability to understand, remember and carry out simple instructions, and to sustain an ordinary routine without special supervision. (Tr. 290.) Moreover, although the ALJ found that Plaintiff's depression was substance-induced, he still accounted for some mental restrictions by limiting the residual functional capacity assessment, as stated earlier. The record supports the ALJ's decision to forego any further restrictions.

Plaintiff also argues that the ALJ failed to "undergo a PRTF within the body of [the] decision" based on depression. The record shows that a Psychiatric Review Technique Form (PRTF) and a Mental Residual Functional Capacity Assessment were completed by a agency psychologist on August 12, 2002, and reviewed and approved by an agency physician. (Tr. 276-93.) Although the ALJ did not refer to this exhibit, the residual functional capacity that he adopted (Tr. 24, 27) is almost identical to that set forth by the agency consultants (Tr. 292), demonstrating that he relied upon it.

Aside from his poly-substance dependence/abuse and his substance-induced depression, the only remaining conditions found by the ALJ to be severe were degenerative disc disease, diabetes, hepatitis, foot problems, and pancreatitis. Substantial

evidence supports the ALJ's conclusion that these impairments were not sufficient to disable Plaintiff.

The medical records document numerous complaints of back pain throughout the years, and diagnostic tests demonstrate the existence of degenerative disc disease at L4-L5 and L5-S1. (Tr. 632.) Plaintiff reported he had suffered from back problems for 20 to 25 years. (Tr. 940.) However, repeated physical examinations of his spine during the applicable time period showed full range of motion, no neurological deficits, and ambulation without difficulty. (E.g., Tr. 450 [12-06-01], 228 [01-11-02], 206-07 [05-08-02], 377-78 [07-11-02], 857-59 [07-23-03]). On May 1, 2003, his back condition was noted to be "stable," and on October 23, 2003, he denied "any active untreated pain problems." (Tr. 760, 917.) Although on at least one occasion a stronger pain prescription was given (Tr. 707-08), the record supports the ALJ's observation that Plaintiff's musculoskeletal pain and discomfort were generally managed through mild pain relievers and muscle relaxants. (Tr. 17, 21, 87, 754, 978.) Plaintiff stated that his pain was relieved by "being still" and was worsened by "excessive" walking or standing (Tr. 87, 854), and he appeared able to sit in a chair without discomfort (Tr. 667), all of which would be consistent with the duties of a sedentary job.[2] See 20 C.F.R. § 404.1567(a), § 416.967(a) (sedentary work involves lifting no more than ten pounds at a time, occasionally carrying articles like docket files, ledgers, and small tools, and occasionally walking and standing).

Plaintiff asserts that his degenerative disc disease would affect his ability to lift beyond the sedentary level. The ALJ found that Plaintiff was limited to work *at the*

---

[2] A sedentary job involves no more than two hours of walking and/or standing a day, and six hours of sitting. 20 C.F.R. § 404.1567(a), 416.967(a).

*sedentary level*, and thus his ability to lift beyond that level is immaterial.  Plaintiff himself testified that he thought he could lift "maybe 5 or 10 pounds" (Tr. 1015), which is within the requirements for sedentary work, and no lifting restrictions were ever placed on him by any medical professional.

The record also shows a history of problems with Plaintiff's feet, but, aside from surgeries in September 2000 (a bunionectomy) and May 2001 (incision and drainage) and subsequent bouts with infection and inflammation, most of Plaintiff's visits were routine checks regarding diabetic risks, removal of painful callouses, and obtaining of orthopedic shoes.  Radiology reports in July 2003 showed that the post-operative conditions had stabilized, with no change since July 2001. (Tr. 634.)  During nearly all of his visits, he was observed as ambulating without difficulty as noted above, and, despite being issued a cane after his surgery, he was observed on at least one occasion as not using it.  (Tr. 667 [09-11-03].)  He was also encouraged to begin a walking program and was instructed in foot care to prevent infection and possible loss of function.  (Tr. 740.)

The most recent comprehensive evaluation of Plaintiff's diabetes was in December 2003, when VA personnel provided diabetes education, observed no tingling or numbness indicative of neuropathy, evaluated his feet, checked his laboratory results, and adjusted his medication.  While it was noted that his diabetes was "still not well-controlled," Plaintiff admitted to not following a proper diet and exercise regimen and said that a multiple injection routine "work[ed] well for his lifestyle." (Tr. 735-40.)  An opthamology consult in February 2004 showed no diabetic retinopathy.  (Tr. 652, 656-58.)  As recognized by the ALJ, despite Plaintiff's poor compliance with diet and medication, there was no evidence

8

of diabetic complications or associated functional restrictions and, during inpatient drug treatment programs, his blood sugar readings were able to be controlled. (Tr. 18, 22.)

The ALJ also noted that Plaintiff's hepatitis C had not progressed to the point of chronic liver disease and that it imposed no severe dysfunction (Tr. 18, 22), which is supported by the medical records. (E.g., Tr. 177-78.) Although the condition was regularly monitored, evaluation and treatment were frustrated by his continued use of alcohol and drugs. For example, a liver biopsy was cancelled due to a positive drug screen on January 29, 2004, to be rescheduled after six months of abstinence. (Tr. 735.) See The Merck Manual 371 (17th ed. 1999) ("In theory, treatment of alcoholic liver disease is simple and straightforward; in practice, it is difficult: *the patient must stop drinking alcohol.*"). With abstinence from alcohol, nonfibriotic liver damage may be reversed and alcohol-induced hepatitis can be controlled. Id.

The record also supports the ALJ's finding that Plaintiff had no recent medical history of any significance related to pancreatitis. (Tr. 18-19.)

As noted by the ALJ (Tr. 22), the record contains no opinions from any physician or other medical professional that Plaintiff is unable to work due to physical or mental limitations. The record shows that, by his own reports, most of Plaintiff's back, feet, hepatitis and diabetes-related problems were long-standing and did not preclude him from maintaining full-time employment in a variety of jobs from 1988 to 2001 (Tr. 90), as well as performing several part-time jobs through the VA's work incentive therapy programs during his period of alleged disability. These included working as a patient escort, folding and stacking laundry, and working as a file clerk. Notably, in undergoing vocational counseling with the VA regarding his suitability for work placement, Plaintiff repeatedly advised that

he had no physical limitations which would preclude any particular work assignments. (Tr. 679-80 [05-02-03]; 674 [07-28-03]; 662-63 [10-20-03].)

Plaintiff argues that the ALJ failed to give proper consideration to his carpal tunnel syndrome, which he says affects his ability to do manipulative tasks. The ALJ found that Plaintiff's carpal tunnel syndrome did not constitute a medically determinable impairment because it was not supported by any acceptable medical evidence and because any related limitations did not meet the twelve-month durational requirement. (Tr. 14.) Plaintiff's medical records repeatedly refer to carpal tunnel syndrome as a reported condition, and, although not mentioned by the ALJ, the record does indicate that EMG/nerve conduction tests were performed at some point and that wrist splints were provided in March 2002. (Tr. 267, 230.) However, Plaintiff has not identified a definitive clinical diagnosis by an acceptable medical source and, as pointed out by the ALJ, the record does not reflect the presence of related functional limitations for a continuous twelve-month period. Therefore, the ALJ did not err in failing to account for any manipulative restrictions due to carpal tunnel syndrome.

Plaintiff also says the ALJ failed to consider Plaintiff's impairments in combination. The ALJ's opinion refutes this, repeatedly stating that the ALJ was considering Plaintiff's impairments in combination, (Tr. 13, 14, 15, 16, 19), and citing the applicable regulations for evaluating multiple impairments. (Tr. 13); see 20 C.F.R. § 404.1523, § 416.923.

Under these circumstances, substantial evidence supports the ALJ's determination that, in the absence of Plaintiff's substance abuse, none of his other impairments were sufficient to disable him from working.

<u>Failure to Order Consultative Exams</u>

Next, Plaintiff contends that the ALJ erred in failing to develop the record by ordering physical and mental consultative exams to further develop the "severity and impact" of Plaintiff's limitations apart from his substance abuse.

An ALJ has a duty to develop the record fully, and it is reversible error for an ALJ not to order a consultative examination "when such an evaluation is necessary for him to make an informed decision." <u>Haley v. Massanari</u>, 258 F.3d 742, 749 (8th Cir. 2001) (no consultative examination warranted where record contains numerous medical reports by treating and consulting physicians and other medical sources, results of medical tests, disability reports by claimant, and hearing testimony).

As stated earlier, the record in this case is voluminous, consisting of over 1,000 pages. This includes disability questionnaires completed by Plaintiff or agency personnel based on his responses (Tr. 64-71, 73, 75-124), written statements from his mother and sister, (Tr. 72, 125), hearing testimony by Plaintiff and his mother (Tr. 1004-37), and extensive medical records from the VA spanning a four-year period, through February 10, 2004. During that time, Plaintiff's various medical conditions were monitored on a regular basis, with the most recent mental health evaluations on October 23, 2003, and September 11, 2003 (Tr. 664-73, 758-64); a comprehensive diabetes evaluation in December 2003 (Tr. 735-40); an opthamology exam in February 2004 (Tr. 652, 656-58); a complete spine lumbosacral radiology series in January 2004 (Tr. 632); a gastroenterology evaluation in December 2003 (Tr. 734); multiple laboratory reports in December 2003 (Tr. 638-51); and a full physical exam in July 2003 (Tr. 857-60).

At the time of the hearing, medical records only through December 2002 had been provided to the ALJ, and Plaintiff said he was willing to undergo a consultative examination. (Tr. 1026, 1037.) The ALJ stated he would decide if that was necessary after he obtained additional records from the VA. Those records, consisting of 363 pages, covered the period from December 31, 2002, to February 2004. (Tr. 2, 631-994.)

Plaintiff's impairments were well-documented, regularly monitored, and recently assessed by VA personnel, and he does not state what specific conditions needed further evaluation or development. The record as a whole was thus sufficient for the ALJ to evaluate the alleged impairments and reach an informed decision.

Credibility Analysis

Next, Plaintiff argues that the ALJ erred in evaluating the credibility of Plaintiff's subjective complaints. Contrary to Plaintiff's assertions, the ALJ discussed Plaintiff's mother's testimony and set forth his reasons for discounting it (Tr. 24); noted Plaintiff's allegation that "physical/mental activity precipitates or aggravates" his symptoms and observed that his symptoms were effectively controlled following exacerbation or precipitating events, such as heavy lifting or accidents (Tr. 20, 21); and noted that no medication side-effects were alleged or established by the medical treatment records (Tr. 21). It was not necessary for the ALJ to discuss in detail the functional limitations of Plaintiff's past work where he found that Plaintiff was unable to perform that work. Although he did not mention the written statement of Theresa Franklin, Plaintiff's sister who is a nurse, she did not testify at the hearing and, in any event, any weight to be given her medical conclusions would be undermined by her relationship to Plaintiff and by other

inconsistent evidence in the record. An "arguable deficiency in opinion-writing technique" is not a sufficient reason to set aside the ALJ's finding where it probably had no practical effect on the outcome. Forte v. Barnhart, 377 F.3d 892, 896 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000) (ALJ's failure to specifically give reasons for disregarding witness's testimony is inconsequential where testimony would be discredited by same evidence that discredits testimony of claimant).

In addition, the ALJ addressed the objective medical findings at length, Plaintiff's "wide range of normal daily activities," his part-time work through the VA work incentive therapy program and other "odd jobs," his sporadic and non-existent pursuit of treatment for some alleged impairments, the absence of long-term usage of strong pain medication for the allegedly disabling back and foot pain, the control of his symptoms through limited treatment and medication usage, the VA's repeated findings that Plaintiff was employable, the absence of any functional restrictions imposed or disability finding by any physician, and Plaintiff's prior work record. (Tr. 17-24.) The ALJ's recitation of the medical evidence accurately reflects the records presented, and the analysis he used complies with the requirements for evaluating a claimant's symptoms and how they affect the claimant's ability to work, as set forth in 20 C.F.R. §§ 404.1527, 404.1529, 416.927, 416.929, and Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history omitted). The ALJ found that the overall record did not support Plaintiff's subjective complaints of pain, symptoms and functional limitations to the extent alleged. (Tr. 24.) The evidence recited by the ALJ, and partially set forth above, constitutes substantial evidence to support his conclusion in this regard. "Where adequately explained and supported, credibility findings

are for the ALJ to make" and will not be disturbed on judicial review. Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000).

### Hypothetical Question

Finally, Plaintiff argues that the ALJ's hypothetical question to the vocational expert failed to encompass all of Plaintiff's limitations, but he does not specify what limitations were omitted.

A hypothetical question posed to a vocational expert must "capture the concrete consequences of [the] claimant's deficiencies." Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001). The ALJ may, however, exclude from the hypothetical question any alleged impairments that he has properly rejected as untrue or unsubstantiated. Id. A hypothetical question is properly phrased if it sets forth impairments supported by substantial evidence in the record and accepted as true by the ALJ. Guilliams v. Barnhart, 393 F.3d 798, 804 (8th Cir. 2005).

The ALJ formulated a residual functional capacity which incorporated physical and mental limitations to the extent he found them to be supported by the record as a whole, taking into account that Plaintiff might experience some functional limitations due to pain and symptoms. (Tr. 24-26.) He asked the vocational expert to assume a individual with that residual functional capacity, along with Plaintiff's age, education and past work experience. (Tr. 1035.) As stated earlier, substantial evidence supports the ALJ's rejection of a more restricted residual functional capacity assessment; therefore, the posed hypothetical was proper.

**Conclusion**

In conclusion, after a careful review of the evidence, the Court finds that Plaintiff's arguments for reversal are without merit and that the record as a whole contains substantial evidence upon which the ALJ could rely in reaching his decision. While there is some evidence in the record to support Plaintiff's allegations, it is not so overwhelming as to negate the substantial, contrary evidence the ALJ relied upon in forming his decision. It is not the province of this Court to reweigh the evidence as it existed before the ALJ. Guilliams, 393 F.3d at 801.

ACCORDINGLY, the final decision of the Commissioner is **affirmed** and Plaintiff's case is **dismissed** with prejudice.

IT IS SO ORDERED this 28th day of September, 2005.

_____
UNITED STATES MAGISTRATE JUDGE